**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

---

**COALITION FOR GREEN CAPITAL,**
1255 Union Street NE, 7th Floor
Washington, D.C. 20002

              *Plaintiff,*

        -against-

**CITIBANK, N.A.,**
5800 South Corporate Place
Sioux Falls, South Dakota 57108,

    **and**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460,

    **and**

**LEE ZELDIN, in his official capacity as ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460,

    **and**

**W.C. MCINTOSH, in his official capacity as ACTING DEPUTY ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460,

              *Defendants.*

---

Civil Action No. 1:25-CV-735

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Coalition for Green Capital ("CGC" or "Plaintiff"), by and through its undersigned counsel, as and for its complaint against Citibank, N.A. ("Citi"), the United States Environmental Protection Agency (the "EPA"), Lee Zeldin, in his official capacity as EPA Administrator, and W.C. McIntosh, in his official capacity as EPA Acting Deputy Administrator (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.     This case seeks to vindicate the right of Plaintiff Coalition for Green Capital ("CGC") to access grant funds to which it is legally entitled, and to enjoin unlawful conduct of the EPA in connection with its issuance of a purported "Notice of Termination."

2.     CGC is the recipient of a $5 billion grant awarded by the EPA in April 2024 under EPA's National Clean Investment Fund ("NCIF") program, and obligated by the EPA pursuant to a grant agreement in August 2024, under a duly enacted congressional statute.  *See* 42 U.S.C. § 7434.  The EPA obligated the grant so that CGC would invest in qualified projects and support the creation of a self-sustaining nationwide network of state and local green banks, community lenders, and community partners to drive the deployment of qualified projects in or benefiting low-income and disadvantaged communities across the United States.  The grant allowed CGC to work with "subrecipients" (or "Subgrantees"), to whom it would disburse "subgrants."

3.     CGC's NCIF grant has supercharged its longstanding mission to cultivate a truly nationwide network of partnerships with state and local communities to build advanced energy infrastructure, and unlock private-sector investment.  CGC's Subgrantees are located across the country—in Florida, Michigan, Ohio, Missouri, California, Maine, Maryland, Delaware, Illinois, Connecticut, Minnesota, Colorado, New York, New Jersey, and D.C.  These projects have the

potential to create hundreds of thousands of well-paid American jobs, all while improving air and water quality and reducing greenhouse gas emissions across the country.

4.    In line with arrangements followed by the federal government for decades, under statutory authority going back to the 1800s, the government procured the services of Citi through a Financial Agency Agreement ("FAA"), dated September 19, 2024, to provide the bank accounts that recipients would be required to use during the period of performance for the grant. As required by the terms of the award issued by EPA, CGC used 100% of the funds available under the award as a non-exchange capital contribution and disbursed the funds to CGC's account at Citi.  .  Citi agreed in an Account Control Agreement (or "ACA") with CGC and the EPA that CGC could deposit the non-exchange capital contribution into the Citi account.  In that ACA, Citi further agreed that it would "comply with all instructions" received from CGC, the holder of the Accounts, "directing the disposition of funds and financial assets in [CGC's] Accounts," with only one exception—*i.e.*, if the EPA issued a "Notice of Exclusive Control," including a "written determination and finding that the Recipient has failed to comply with the terms and conditions of this Assistance Agreement, and that noncompliance is substantial such that effective performance of the Assistance Agreement is Materially Impaired or there is adequate evidence of Waste, Fraud, or Abuse or material misrepresentation of eligibility status, and that EPA has initiated action under 2 CFR 200.339 to wholly or partly suspend or terminate the Federal award, as authorized in the terms of the Assistance Agreement." Terms & Conditions at p. 54.

5.    Citi entered into similar account control agreements (the "Subgrantee ACAs," and each a "Subgrantee ACA") with CGC and CGC's Subgrantees, whereby Citi agreed to abide by the instructions of CGC's Subgrantees directing the disposition of funds and financial assets in

their accounts with Citi unless CGC, in its capacity as a secured party, itself issued a Notice of Exclusive Control.  Again, funds were disbursed to those accounts in reliance on the contracts.

6.    The EPA explicitly contemplated and negotiated the structure of the FAA, ACA, and Subgrantee ACAs from the inception of the NCIF program in order to give EPA more control over what happened to the grant funds after they had been used as a non-exchange capital contribution.  This arrangement—including the specific use of an FAA—was designed to support the EPA's interests, fidelity to the purposes of the statute, and ensure full transparency and accountability, while permitting capitalization of the grant recipients consistent with the objectives of the NCIF program.

7.    The ACAs are hardly a blank check to CGC—the Citi Accounts are not structured like an ordinary checking account to be drawn from at will.  CGC's instructions to Citi regarding the disposition of funds and financial assets in its Accounts must comply with not only the ACA, but also CGC's other contractual obligations, including its Grant Agreement and the Terms and Conditions of the NCIF program, as well as specified reporting requirements, ensuring that the EPA is and has been fully aware of all account activities.

8.    On February 12, 2025, Lee Zeldin, the newly appointed administrator of the EPA, made a public statement on Twitter, now X, announcing EPA's intent to claw back the funds appropriated by Congress, obligated by the EPA in the previous administration, awarded to CGC and the other grantees, used consistent with the terms of the awards and disbursed to grantees, including CGC.  Mr. Zeldin stated that "the financial agent agreement with [Citi] needs to be instantly terminated," that Citi "must immediately return" the funds, and that he would refer the matter "to the Inspector General's Office and will work with the Justice Department."

9.    Public reports state that the Office of the Deputy Attorney General and interim U.S. Attorney for the District of Columbia, Ed Martin, attempted to open a criminal investigation into whether these grants were lawfully awarded, but these attempts failed because there was insufficient evidence of wrongdoing to commence a grand-jury investigation.[1]    Likewise, according to those reports, Mr. Martin's attempts to obtain a seizure warrant failed when a magistrate judge of this Court rejected his application.

10.    Nevertheless, since February 18, 2025, CGC and its Subgrantees have been unable to access the funds in their Accounts at Citi, thus impairing their ability to implement the EPA-approved workplan as required by its grant, despite the fact that the EPA has not issued a Notice of Exclusive Control to Citi.

11.    On March 6, 2025, undersigned counsel for CGC wrote to Citi seeking to confirm that Citi would comply with all applicable terms of the ACA and comply with the instructions of CGC and its Subgrantees directing the disposition of funds and financial assets in their respective accounts, as it is contractually obligated to do unless and until a Notice of Exclusive Control is issued.    CGC asked for a response that week, but Citi did not respond—and still has not.

12.    On March 10, 2025, CGC sued Citi in the S.D.N.Y. to obtain access to its funds. *Coalition for Green Capital v. Citibank, N.A.*, Case No. 1:25-cv-01964 (S.D.N.Y.).    In response, counsel for Citi suggested to CGC's counsel that EPA (and perhaps the Treasury Department) were "indispensable parties" to any dispute against Citi.

13.    Then, on March 11, 2025 at 6:23pm Eastern, W.C. McIntosh, Acting Deputy Administrator for the EPA, emailed CGC a purported "Notice of Termination."  *See* **Exhibit A.**

---

[1] *Read the resignation letters by Denise Cheung, a veteran D.C. federal prosecutor*, Washington Post (March 6, 2025), *available at* www.washingtonpost.com/dc-md-va/2025/02/18/read-resignation-letter-denise-cheung/.

This so-called Notice of Termination is not a Notice of Exclusive Control as required by the ACA. As set forth below, it also cited irrelevant statutory and regulatory authority, and was patently and plainly unlawful on its face. To the extent that the Notice of Termination is found to be lawful, then, as stated in the Notice, CGC would be subject to the "Closeout Agreement" it entered with EPA. Under that agreement, "Once the Closeout Agreement goes into effect, the Recipient will be entitled to transfer any remaining funds in the Deposit Account to an account at a financial institution of its choosing, provided such account is insured in accordance with 2 CFR 200.305(b)(10))."

14.     To date, Citi continues to refuse releasing the funds to which CGC is entitled, despite the ACA's clear terms that Citi "shall comply with all instructions, notifications, and entitlement orders the Bank receives directing the disposition of funds and financial assets in the Accounts . . . until the time that that Bank receives a [Notice of Exclusive Control] from the [EPA] that the [EPA] is exercising its right to exclusive control over an Account."

15.     Given Citi's continued refusals and EPA's issuance of its purported Notice, CGC discontinued its SDNY action without prejudice and now brings this suit to seek injunctive relief against Citi and to challenge EPA's illegitimate and unlawful attempt to prohibit CGC from accessing the funds to which it is entitled under the ACA and congressional statute.

## THE PARTIES

16.     Plaintiff CGC is a nonprofit corporation organized under the laws of the District of Columbia with its principal place of business in the District of Columbia.

17.     Defendant Citi is a national banking association organized under the laws of the United States with its main office in South Dakota.  It is a citizen of South Dakota for purposes of the federal diversity statute.

18.     Defendant EPA is the agency of the federal government of the United States responsible for administering the GGRF and its constituent NCIF program.  EPA is an agency within the meaning of the APA.

19.     Defendant Lee Zeldin is the EPA Administrator and the agency's highest ranking official.  CGC sues Administrator Zeldin in his official capacity.

20.     Defendant W.C. McIntosh is the EPA Acting Deputy Administrator, and the individual who signed the so-called Notice of Termination on March 11, 2025.  CGC sues Deputy Administrator McIntosh in his official capacity.

21.     Nonparties California Infrastructure and Economic Development Bank; Colorado Clean Energy Fund; The Community Development Venture Capital Alliance; City First Enterprises, Inc.; Connecticut Green Bank; Efficiency Maine Trust; Elemental GG LLC; Green Finance Authority; ICLEI-Local Governments for Sustainability USA; Illinois Finance Authority; Montgomery County Green Bank; Michigan Saves; Minnesota Climate Innovation Finance Authority; Missouri State Environmental Improvement and Energy Resources Authority; New Jersey Green Bank; New York City Energy Efficiency Corporation; NY Green Bank; Ohio Air Quality Development Authority; and Solar and Energy Loan Fund of St. Lucie County, Inc. are the Subgrantees.  Each is party to a separate Account Control Agreement with CGC and Citi.

## JURISDICTION AND VENUE

22.     The Court has jurisdiction over CGC's claims against Defendants EPA, Zeldin, and McIntosh under 28 U.S.C. § 1331 and 5 U.S.C. § 702.

23.     This Court has subject-matter jurisdiction over the claims against Citi under 28 U.S.C. § 1332(a)(2) because Plaintiff and Defendant are citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs, as well as 28 U.S.C. § 1367.  CGC is a citizen of the District of Columbia, and Citi is a citizen of South Dakota for purposes of § 1332 because the "main office" listed in its articles of association is there.

24.     Venue is proper in this district because the EPA is located in this district and a substantial part of the acts or omissions giving rise to the claim occurred in this district.  28 U.S.C. § 1391(e).

## FACTUAL ALLEGATIONS

### The Terms Of The CGC Account Control Agreement

25.     The ACA, dated November 1, 2024, as amended, was executed between CGC, as Pledgor; the EPA, as Secured Party; and Citi, as Bank.

26.     The ACA provides in Section 1(a) that Citi "maintains the Accounts for [CGC], and all property (including, without limitation, all funds and financial assets) held by [Citi] for the accounts of [CGC] are, and will continue to be, credited to the Accounts in accordance with the instructions given by [CGC] (unless otherwise provided herein)."

27.     Section 2 of the ACA requires Citi to "comply with all instructions, notifications, and entitlement orders [Citi] receives directing the disposition of funds and financial assets in the Accounts including, without limitation, directions to distribute proceeds of any such transfer or redemption of interest or dividends on financial assets in the Accounts, substantially in the form

attached hereto . . . , originated by [CGC], until the time that that [Citi] receives a notice . . . (a 'Notice of Exclusive Control') from [the EPA] that [the EPA] is exercising its right to exclusive control over an Account."[2]

28.    In other words, under the ACA, Citi cannot restrict CGC's access to its Accounts unless EPA issues a Notice of Exclusive Control to Citi.

29.    The Notice of Exclusive Control must state in writing, in substantially the form provided as Exhibit A to the ACA, that the EPA:

> has issued a written determination finding that [CGC] has failed to comply with the terms and conditions of the Grant Agreement, and that noncompliance is substantial such that effective performance of the Grant Agreement is materially impaired or there is adequate evidence of waste, fraud, material misrepresentation of eligibility status, or abuse, and that [EPA] has initiated action under 2 CFR 200.339 to wholly or partly suspend or terminate the Grant Agreement, as authorized in the terms of the Grant Agreement.

30.    To CGC's knowledge, no Notice of Exclusive Control has been issued to Citi.  If one had been, CGC should have received it contemporaneously, along with EPA's written determination and notice that EPA initiated action under 2 CFR 200.339 to suspend or terminate CGC's grant agreement, but CGC received neither.  Indeed, the Terms and Conditions of CGC's grant agreement explain that "[t]he written determination and finding and a copy of the Notice of Exclusive Control shall be sent to [CGC] when the Notice of Exclusive Control is furnished to [Citi]," and go on to state that "EPA and [CGC] have mutually agreed *only* to the specific process outlined in this term for furnishing a Notice of Exclusive Control instruction to [Citi]."

---

[2] An amendment to the ACA added a proviso (not presently relevant) that "after the delivery of a Notice of Exclusive Control, [Citi] shall continue to disburse funds and financial assets associated with financial obligations 'properly incurred' by [CGC] prior to the issuance of, but not in anticipation of, a delivery of a Notice of Exclusive Control, in [CGC's] 'Reserve' Account pursuant to Account Directions originated by [CGC] except for any specific funds or financial assets, identified by [the EPA] in the applicable Notice of Exclusive Control as not being 'properly incurred' by [CGC] in accordance with 2 CFR 200.343."

31.     Nevertheless, since at least February 18, 2025, without any justification provided to CGC, Citi has refused to comply with duly issued instructions directing the disposition of funds and financial assets in CGC's Accounts.  This has impaired and will continue to impair CGC's ability to carry out its mission as mandated by Congress.

32.     Citi's sole public justification for failing to comply with CGC's instructions, issued after the filing of litigation against it, is that it "has been working with the federal government in its efforts to address government officials' concerns regarding this federal grant program," but that is not a valid basis or justification to excuse performance under the plain terms of the ACA, and neither is the more-recently issued purported Notice of Termination.

33.     With no legal or factual basis to justify its actions, Citi's freezing of CGC's funds constitutes an intentional and wrongful breach of its obligations under the ACA and a conversion of the Accounts and the funds therein.

***The Terms Of The Subgrantee Account Control Agreements***

34.     Like CGC's ACA, each Subgrantee ACA was executed among the respective Subgrantee, as Pledgor; CGC, as Secured Party; and Citi, as Bank.  The Subgrantee ACAs were executed between January 14 and January 28, 2025.

35.     Sections 1 and 2 of the Subgrantee ACAs are functionally identical to the same sections contained in CGC's ACA with the EPA and Citi.  Namely, Citi must honor each Subgrantee's instructions directing the disposition of funds and financial assets in their accounts unless Citi receives a Notice of Exclusive Control from CGC (rather than the EPA).

36.     The only difference is in the structure of the Subgrantee ACAs:  the EPA is not a party to these agreements.  Instead, CGC is the Secured Party under the Subgrantee ACAs vested

with the authority to issue a Notice of Exclusive Control, and in order to issue a Notice of Exclusive

Control, CGC must issue a written determination either that the Subgrantee:

> has failed to comply with the terms and conditions of the Subaward Agreement, and that noncompliance is substantial such that effective performance of the Subaward Agreement is Materially Impaired or there is adequate evidence of Waste, Fraud, or Abuse or material misrepresentation of eligibility status, and that the Secured Party has initiated action under 2 CFR 200.339, or 2 CFR 200.332(d) or (i), to wholly or partly suspend or terminate the Subaward Agreement as authorized in the terms of the Subaward Agreement or applicable provisions of 2 CFR Part 200, . . . or, . . . [a]nother condition constituting a default in the Subaward Agreement has occurred and is continuing.

37.     Citi may refuse to disburse funds to a Subgrantee only if CGC issues such a notice to Citi, but CGC has issued no such notices.  This has impaired and will continue to impair the ability of CGC's Subgrantees to carry out the mission as mandated by Congress.

38.     As noted, Citi has failed to comply with instructions from the Subgrantees directing the disposition of funds and financial assets in their accounts as well, and this freezing also amounts to an intentional and wrongful breach of the Subgrantee ACAs.

***The EPA's Purported March 11, 2025 "Notice of Termination"***

39.     On March 11, 2025 at 6:23pm Eastern, one day after CGC filed a lawsuit against Citi, CGC received a so-called "Notice of Termination," by email, signed by Acting Deputy Administrator for the EPA, W.C. McIntosh.

40.     According to the March 11 Notice, EPA was purporting to "terminat[e] Grant Agreement No. 84094201 awarded to the Coalition for Green Capital under the Greenhouse Gas Reduction Fund ('GGRF'), effective immediately."  This Notice is identical to the notice issued by EPA to another fund recipient, Climate United, after Climate United sued EPA and Citi in this Court, and EPA sent that notice to Climate United at 6:22pm.

41.     According to public reports, and on information and belief, EPA issued the same notice to all NCIF recipients simultaneously.  https://www.epa.gov/newsreleases/administrator-zeldin-terminates-biden-harris-20b-gold-bar-grants.  The EPA's press release stated that EPA's termination of all the grants was "based on substantial concerns regarding the Greenhouse Gas Reduction Fund (GGRF) program integrity, the award process, programmatic fraud, waste, and abuse, and misalignment with agency's priorities, which collectively undermine the fundamental goals and statutory objectives of the award."  The release added that "EPA will work to re-obligate lawfully appropriated funds in the GGRF with enhanced controls to ensure adequate governance, transparency, and accountability, consistent with statutory requirements."  See **Exhibit B**.

42.     The so-called Notice of Termination issued to CGC is not a Notice of Exclusive Control as required by the ACA, and it is also unlawful.  Indeed, this Notice does not contain *any* findings with regard to CGC at all.  Instead, it states in cursory fashion that "a comprehensive review" that is "consistent with multiple ongoing independent federal investigations" (none of which have been revealed to CGC) identified "material deficiencies" regarding GGRF that "cannot be remedied by imposing specific conditions."  According to the Notice, these conclusory findings with regard to the GGRF, combined with Administrator Zeldin's "concerns," justify the termination of CGC's grant funding, along with all other funding under GGRF.  Consistent with the press release, the Notice states that "EPA will work to re-obligate lawfully appropriated funds within the GGRF program with enhanced controls to ensure adequate governance, transparency, and accountability, consistent with applicable regulatory and statutory requirements."

## COUNT ONE: VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C.§ 706(2)

**(Defendants EPA, Administrator Zeldin, Deputy Administrator McIntosh)**

43.     Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

44.     The APA authorizes this Court to hold unlawful and set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

45.     EPA's purported Notice of Termination sent on March 11, 2025, amounts to final agency action under the APA.

46.     Defendants' purported Notice of Termination is invalid, arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law because, among other things:

   a.   The EPA's Notice violates EPA regulations and Uniform Grant Guidance regulations codified at 2 C.F.R. § 200 *et seq.*, and EPA's stated basis for termination—including references to program integrity, the award process, programmatic fraud, waste, and abuse, and misalignment with agency's priorities— are not lawful grounds for termination under applicable statutes and regulations, and do not trigger the sole regulatory authority invoked by EPA, namely 2 C.F.R. § 200.340.  Indeed, that provision permits termination without CGC's consent only "[b]y the Federal agency . . . if the recipient . . . fails to comply with the terms and conditions of the Federal award" or "[b]y the Federal agency . . . pursuant to the terms and conditions of the Federal award. . . ."

   b.   Any EPA action supposedly based on a finding of individualized "waste, fraud, and abuse" is arbitrary and pretextual, as demonstrated by the Notice not citing any such

finding, the fact that EPA terminated all the NCIF grants simultaneously, and by EPA's stated public justification for terminating all the grants being "*program* integrity, the *award process*, *programmatic* fraud, waste, and abuse, and misalignment with agency's priorities." (Emphasis added.)

c. EPA's Notice failed to make a sufficient "determin[ation] that noncompliance cannot be remedied by imposing specific conditions." 2 C.F.R. § 200.339. Indeed, the Notice and related press release state the opposite, given that EPA terminated all the NCIF grants while simultaneously stating its intent to "re-obligate lawfully appropriated funds in the GGRF with enhanced controls."

d. EPA's Notice fails to provide appeal rights as required by 2 CFR 200.342.

e. EPA's Notice reflects a change in position, and that change has been taken without an adequate or reasoned explanation having been provided. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016); *Southwest Airlines Co. v. FERC*, 926 F.3d 851 (D.C. Cir. 2019).

f. Acting Deputy Administrator McIntosh lacks authority to take action under 2 C.F.R. § 200.340 or otherwise issue the purported Notice.

g. EPA's Notice violates the statute establishing the grant fund, 42 U.S.C. § 7434.

h. EPA's Notice violates federal appropriations law, which legally requires EPA to spend the funds appropriated for distribution under the Greenhouse Gas Reduction Fund, 42 U.S.C. § 7434, because EPA has not satisfied the stringent requirements for rescinding an appropriation under 2 U.S.C. § 683.

i. EPA's Notice seeks to improperly withhold payment for allowable costs without establishing that CGC has either "failed to comply with the terms and conditions of

14

the Federal award" or is "delinquent in a debt to the United States." 2 C.F.R. § 200.305(b)(6). Indeed, there is no factual basis for EPA to make such a showing against CGC, as the text of the generic "Notice of Termination" makes clear.

j. EPA has not otherwise provided an adequate or reasoned basis for its suspension or termination of the grant. Nor could it, as there is no factual basis for the suspension or termination of the grant.

47. As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer irreparable injury.

48. CGC is entitled to an injunction against the wrongful action of EPA, Administrator Zeldin, and Deputy Administrator McIntosh.

49. Pursuant to 28 U.S.C. § 2201, CGC is entitled to a declaration that the purported termination of CGC's grant by EPA, Administrator Zeldin, and Deputy Administrator McIntosh was arbitrary, capricious, an abuse of discretion, not in accordance with law, and thus invalid.

## COUNT TWO: VIOLATION OF THE DUE PROCESS CLAUSE
**(Defendants EPA, Administrator Zeldin, Deputy Administrator McIntosh)**

50. Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

51. Under the Fifth Amendment to the United States Constitution, the government may not deprive a person or entity of a protected property interest without due process of law.

52. CGC has a protected property interest in the grant funds it was awarded under the NCIF and which were disbursed to it, including into its account at Citibank, and any funds disbursed onward, including to the accounts of Subgrantees at Citi.

53. Defendants have purported to suspend or terminate CGC's grant without providing notice or an opportunity to be heard.

54.     CGC is entitled to an injunction against EPA's wrongful action.

55.     Pursuant to 28 U.S.C. § 2201, CGC is entitled to a declaration that Defendants' suspension and termination of the grant violated due process of law.

## COUNT THREE: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A), AND U.S. CONSTITUTION (Appointments Clause)
### (Deputy Administrator McIntosh)

56.     Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

57.     The APA provides that a court "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

58.     The Appointments Clause of the U.S. Constitution provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all . . . Officers of the United States, whose Appointments are not . . . otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

59.     "[A]ny appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed" by the Appointments Clause. *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam). Where an official exercises discretion and can make a final decision on an exercise of the government's sovereign authority, that official is an "officer" for purposes of the Appointments Clause. *See Lucia v. SEC*, 585 U.S. 237, 247 (2018); *United States v. Arthrex*, 594 U.S. 1, 13

(2021).  An inferior officer may be appointed "by the President alone, the head of an executive department, or a court."  *Arthrex*, 594 U.S. at 10.

60.     Purporting to terminate a grant under the Greenhouse Gas Reduction Fund is an exercise of significant authority pursuant to the laws of the United States.  Termination of the grant, if valid, would conclusively affect the rights and obligations of the grantee, as well as its subgrantees. Implementation of the grant implicates important statutory, regulatory, and contractual rights, as well as matters of significant public concern and agency policy.

61.     Given the power vested in the Deputy Administrator, the Deputy Administrator— or Acting Deputy Administrator—must be an officer of the United States appointed pursuant to the Appointments Clause. *See Lucia*, 585 U.S. at 247; *Arthrex*, 594 U.S. at 13.

62.     Acting Deputy Administrator William Charles McIntosh signed the March 11 letter purporting to terminate CGC's grant.  McIntosh was not appointed by the President and confirmed by the Senate.  *See* United States Government Policy and Supporting Positions (Plum Book) 2024 at 69 (confirming that Deputy EPA Administrators are not President-appointed and Senate-confirmed).   McIntosh thus cannot be a principal officer and cannot exercise power reserved to such officers. *See Arthrex*, 594 U.S. at 12 ("Only the President, with the advice and consent of the Senate, can appoint noninferior officers, called 'principal' officers as shorthand in our cases.").

63.     Nor, upon information and belief, has McIntosh been properly appointed as an inferior officer by an appropriate "Head[] of Department."

64.     McIntosh is therefore exercising "significant authority under the laws of the United States" by making the ultimate decision to order the termination of CGC's grant.  But he is not doing so pursuant to a valid appointment as an officer.  Because the power held by the Deputy Administrator for terminating a grant under the Greenhouse Gas Reduction Fund can be properly

executed only by an officer, and because McIntosh is not a properly appointed officer, his purported termination of CGC's grant is contrary to law and a violation of the Appointments Clause.

65.    This Court should vacate the Notice purporting to terminate CGC's grant because EPA's failure to comply with the Appointments Clause renders it unlawful.

## COUNT FOUR: BREACH OF CONTRACT
### (Defendant Citi)

66.    Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

67.    The ACA is a valid agreement between CGC, the EPA, and Citi. CGC has fully performed all its obligations under the ACA and otherwise.

68.    Citi has a duty under the ACA to "comply with all instructions, notifications, and entitlement orders the Bank receives directing the disposition of funds and financial assets in the Accounts."

69.    Since February 18, 2025, Citi has declined to abide by any such instruction from CGC, and is also refusing to confirm that it will comply with CGC's instructions despite being asked multiple times. CGC's Accounts at Citi are currently frozen.

70.    Citi has no legal or factual basis for its freeze of CGC's accounts or its failure to comply with CGC's instructions.

71.    The EPA has not notified CGC of an intention to exercise exclusive control over any of CGC's Accounts, nor has it provided Citi with a Notice of Exclusive Control. The EPA has not issued "a written determination and finding that [CGC] has failed to comply with the terms and conditions of the Grant Agreement, and that noncompliance is substantial such that effective performance of the Grant Agreement is materially impaired or there is adequate evidence of waste,

fraud, material misrepresentation of eligibility status, or abuse, and that [EPA] has initiated action under 2 CFR 200.339 to wholly or partly suspend or terminate the Grant Agreement." The EPA's purported Notice of Termination does not qualify because it is unlawful and invalid, as set forth herein, and also does not meet the requirements of the ACA to be a qualifying Notice of Exclusive Control.

72.    Citi has breached the ACA by freezing CGC's Accounts and failing to comply with instructions from CGC directing the disposition of funds and financial assets in CGC's Accounts. CGC has suffered, and will continue to suffer, injury as a direct result of Citi's breach.

73.    CGC is entitled to an injunction and order mandating that Citi specifically perform its obligations under the ACA, including Section 2 as amended.

74.    CGC is further entitled to a declaration, under 28 U.S.C. § 2201, that (a) Citi's freeze of CGC's Accounts and failure to comply with CGC's instructions are a breach of the ACA, (b) Citi must abide by all instructions issued by CGC until and unless a Notice of Exclusive Control issues, and (c) "working with the federal government in its efforts to address government officials' concerns regarding this federal grant program" is not a justification for failure to adhere to the ACA, and neither is the purported Notice of Termination issued on March 11, 2025.

## COUNT FIVE: CONVERSION
### (Defendant Citi)

75.    Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

76.    In accordance with the ACA, CGC has a superior legal right to possess and control the disposition of funds and financial assets held in its Accounts at Citi.

77.    Citi has wrongfully and intentionally exercised dominion or control over CGC's funds in CGC's Accounts without CGC's consent, including by failing to comply with CGC's

valid instructions directing the disposition of funds and financial assets in CGC's Accounts, without any lawful justification.

78.    Citi has substantially or permanently interfered with CGC's property rights, including by failing to comply with CGC's valid and lawful instructions.

79.    Citi's actions have caused injury to CGC and the Subgrantees.

80.    CGC is entitled to an injunction and order mandating that Citi cease its wrongful retention of the funds in CGC's Accounts resulting from its failure to comply with CGC's valid and lawful instructions.

81.    Under 28 U.S.C. § 2201, CGC is further entitled to a declaration that Citi's failure to comply with the valid and lawful instructions of CGC directing the disposition of funds and financial assets in CGC's Accounts constitutes a conversion of CGC's Accounts and the funds in those Accounts.

## COUNT SIX: REPLEVIN
### (Defendant Citi)

82.    Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

83.    CGC has an immediate and superior legal right to direct the disposition of funds and financial assets in its Accounts, and to direct the disposition of any funds and financial assets as instructed to Citi thereafter.

84.    Citi has wrongfully detained the funds in CGC's Accounts by unlawfully failing to comply with CGC's valid and lawful instructions directing their disposition.

85.    Citi's actions have caused injury to CGC and the Subgrantees.

86.    CGC is entitled to an injunction and order mandating that Citi cease its wrongful detention of CGC's Accounts, and the funds therein, as a result of its failure to comply with CGC's

valid and lawful instructions directing the disposition of funds and financial assets in CGC's Accounts.

## COUNT SEVEN: DECLARATORY JUDGMENT & BREACH OF CONTRACT ASSERTED BY SUBGRANTEE ACAS
### (Defendant Citi)

87.     Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

88.     A controversy exists between the parties as to the rights of access to funds held in Subgrantee accounts at Citi under Subgrantee ACAs.

89.     The Subgrantee ACAs are valid agreements between CGC, Citi, and the Subgrantees.  CGC has fully performed all its obligations under the Subgrantee ACAs and, on information and belief, so have the Subgrantees.

90.     Citi has a duty under the Subgrantee ACAs to comply with instructions from the Subgrantees directing the disposition of funds and financial assets in their accounts, and also to abide by any Notice of Exclusive Control that may be issued by CGC, as Secured Party.

91.     Citi has refused to abide by valid and lawfully issued instructions issued by CGC's Subgrantees.

92.     CGC has suffered, and will continue to suffer, injury as a direct result of Citi's breach.  These injuries include, but are not limited to, CGC's inability to execute on the activities and goals set forth in its workplan in effect under its grant agreement with EPA through its Subgrantees and CGC's deprivation by Citi of its exclusive right to issue a Notice of Exclusive Control to CGC's Subgrantees.

93.     CGC is entitled to a declaration, under 28 U.S.C. § 2201, that (a) Citi's freeze of and failure to disburse funds from the Subgrantee accounts are a breach of contract, (b) Citi must

abide by the instructions issued by CGC's Subgrantees and any Notice of Exclusive Control that CGC may issue, and (c) "working with the federal government in its efforts to address government officials' concerns regarding this federal grant program" is not a justification for failure to adhere by the terms of the Subgrantee ACAs, and neither is the purported Notice of Termination issued on March 11, 2025.

### COUNT EIGHT: ACTIONS IN EXCESS OF STATUTORY AUTHORITY OR CONTRARY TO CONSTITUTION
### (Defendants EPA, Administrator Zeldin, Deputy Administrator McIntosh)

94.    Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

95.    For Plaintiff's claims that the non-Citibank Defendants acted in excess of their statutory and regulatory authority, or have acted in violation of the Constitution of the United States, Plaintiff has causes of action, separate from the APA, to sue for injunctive relief under the equity jurisdiction of federal courts, *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015) (citing *Am. Sch. Of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902)), and for declaratory relief, *see* 28 U.S.C. §§ 2201, 2202.

### PRAYER FOR RELIEF

WHEREFORE, CGC respectfully requests that the Court enter judgment as follows:

a. Declaring that EPA, Administrator Zeldin, and/or Deputy Administrator McIntosh's purported suspension or termination of the grant violates the Administrative Procedure Act and applicable statutes and regulations;

b. Declaring that EPA, Administrator Zeldin, and/or Deputy Administrator McIntosh's purported suspension or termination of the grant violates the Fifth Amendment's Due Process Clause;

c.  Declaring that EPA's "Notice of Termination" sent on March 11, 2025 is void and without any effect;

d.  Enjoining EPA, Administrator Zeldin, and Deputy Administrator McIntosh from unlawfully terminating CGC's grant award except as permitted in accordance with the ACA, the grant award, and applicable law;

e.  Enjoining EPA, Administrator Zeldin, Deputy Administrator McIntosh, and others in active concert or participation with them from impeding Citibank from complying with its contractual obligations, or otherwise causing Citibank to deny, obstruct, delay, or otherwise prevent CGC from accessing its funds at CGC's request as provided for under the terms of the ACA and the grant award;

f.  Declaring that Citi's freeze of CGC's Accounts, and failure to comply with valid and lawful instructions from CGC directing the disposition of funds and financial assets in CGC's Accounts, constitutes a breach of the ACA and a conversion of CGC's Accounts and the funds therein;

g.  Declaring that Citi's freeze of the Subgrantees' accounts, and failure to comply with valid and lawful instructions from the Subgrantees directing the disposition of funds and financial assets in their accounts, constitutes a breach of the Subgrantee ACAs;

h.  Enjoining and ordering Citi to cease wrongfully detaining CGC's funds by failing to comply with CGC's valid and lawful instructions directing the disposition of funds and financial assets in CGC's Accounts, and directing Citi to specifically perform its contractual obligations under the ACA, including by

complying with CGC's valid and lawful instructions, both with respect to CGC's previously submitted instructions and any future instructions;

i.   Enjoining and ordering Citi to specifically perform its contractual obligations under the Subgrantee ACAs, including by complying with instructions from the Subgrantees directing the disposition of funds and financial assets in their accounts, both with respect to the Subgrantees' previously submitted instructions and any future instructions, and any Notice of Exclusive Control that CGC may issue in the future; and

j.   Granting CGC such other and further relief as the Court may deem just and equitable.

DATED:   March 12, 2025
         New York, New York

HOLWELL SHUSTER & GOLDBERG LLP

By:   */s/ Vincent Levy*
Vincent Levy (NY0487)
Kevin D. Benish (NY0495)
Patrick J. Woods (*Admission Application Forthcoming*)
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff*